NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
AGUSTIN D. OROZCO (Cal. Bar No. 271852)
Public Corruption & Civil Rights Section
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Major Frauds Section
Assistant United States Attorney
     1500/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2216/1259
     Facsimile: (213) 894-0141
     E-mail:    agustin.d.orozco@usdoj.gov
                alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-863-JAK-4 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT ARMANDO MOLINA |
| v. | Hearing Date: May 14, 2020 |
| ARMANDO MOLINA, aka "Criminal,", | Hearing Time: 8:30 a.m. Location: Courtroom of the Hon. John A. |
| Defendant. | Kronstadt |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Agustin D. Orozco and Alexander B. Schwab, hereby files its sentencing position with respect to defendant Armando Molina ("defendant").

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the

//

//

presentence investigation report ("PSR"), and such further evidence and argument as the Court may permit.

Dated: April 30, 2020               Respectfully submitted,

                                    NICOLA T. HANNA
                                    United States Attorney

                                    BRANDON D. FOX
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                          /s/
                                    AGUSTIN D. OROZCO
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Armando Molina was convicted by a federal jury of all six counts charged against him. Defendant, who goes by the moniker "Criminal," sought to establish Mexican Mafia dominance over drug trafficking and extortionate "tax" collection in the Ventura County area. In doing so, he himself sold methamphetamine, coordinated drug sales, and collected taxes.

The crimes in this case are part of a pattern of criminality stemming from defendant's affiliation with the Surtown Chiques gang. Prior to the committing the underlying offenses here, defendant had been previously convicted of three felony convictions containing gang enhancements. Due to the seriousness of defendant's crimes in this case, criminal history, and refusal to take responsibility for his actions, defendant's sentence should be substantial. The government, therefore, requests that the Court impose a low-end sentence of 168 months' imprisonment.

**II.  STATEMENT OF FACTS**

Defendant and his co-defendant, Frank Ruiz, both Surtown Chiques gang members, engaged in a conspiracy to distribute methamphetamine to, and collect taxes from, local gang members on behalf of the Mexican Mafia. As part of these efforts, defendant and Ruiz proceeded to sell methamphetamine and collect taxes from a confidential informant ("CI") working with the FBI on six occasions between October 24, 2012 and June 7, 2013.

Specifically, On October 24, 2012, defendant and Ruiz met with the CI and agreed to provide the CI with two ounces of methamphetamine. (PSR ¶ 20.) During the meeting, defendant and Ruiz

explained that the CI would be expected to pay $200 per week in "taxes" and that any person buying drugs from defendant and Ruiz would have to pay a "tax" in addition to the purchase price of the drugs.  (PSR ¶ 20.)  Subsequently, on or about October 26, 2012, defendant provided the CI approximately 55.4 grams of pure methamphetamine to be paid back by the CI at a later date at a price of $650 an ounce once the CI sold the methamphetamine.  (PSR ¶ 20.)

On October 29, 2012, after the CI coordinated the payment with Ruiz, the CI paid defendant $1,500 ($1,300 for the 55.4 grams of methamphetamine and $200 in weekly narcotics "tax").  (PSR ¶ 21.)  Defendant also provided the CI with an additional 27.7 grams of pure methamphetamine to sell.  (PSR ¶ 21.)

On November 2, 2012, defendant told the CI to call Ruiz to arrange the payment of $650 for the 27.7 grams of methamphetamine that defendant provided the CI on October 29, 2012.  (PSR ¶ 22.)  Ruiz met with the CI later that day and the CI paid Ruiz $650 for the approximately 27.7 grams of methamphetamine.  (PSR ¶ 22.)

That same day, Ruiz told the CI that Ruiz would agree to relieve the CI of paying any drug "taxes" in the future if the CI paid $700 per ounce of methamphetamine.  (PSR ¶ 23.)  Subsequently, on November 8, 2012, defendant sold the CI approximately two ounces, or 55.4 grams, of pure methamphetamine at a price of $700 per ounce.  (PSR ¶ 23.)

Thereafter, defendant and his co-conspirators distributed methamphetamine to the CI on three additional occasions.  (PSR ¶ 24.)  On January 4, 2013, defendant and Ruiz sold the CI approximately 52.5 grams of pure methamphetamine in exchange for $1,300.  (PSR ¶ 24.)  On March 12, 2013, defendant sold the CI approximately 56 grams of

pure methamphetamine for $1,300.  (PSR ¶ 25.)  On June 7, 2013, Ruiz sold the CI approximately 20.4 grams of pure methamphetamine in exchange for $550.  In total, defendant and Ruiz distributed approximately 267 grams of pure methamphetamine throughout the course of the conspiracy.

### III. SENTENCING GUIDELINES

The government agrees with the PSR's calculation of defendant's sentencing guidelines.  The 267 grams of actual methamphetamine that was involved in defendant's conspiracy triggers a base offense level of 32.  (PSR ¶ 32).  Defendant's total offense level, coupled with defendant's category IV criminal history, results in a guideline range of 168 to 210 months' imprisonment.  The government agrees with the USPO's recommended low-end Guidelines sentence of 168 months' imprisonment.  (Dkt. 499 at 1.)

### IV. ARGUMENT

A 168-month federal sentence would satisfy § 3553(a)'s mandate that defendant's sentence be "sufficient, but not greater than necessary."  The Court should appropriately account both for the seriousness of defendant's underlying conduct, as well as his criminal history that demonstrates a pattern of gang-related criminal conduct.  While defendant was convicted at trial of conspiracy to distribute and distribution of methamphetamine, defendant was more than some street dealer doling out methamphetamine to addicts to make a buck; rather, he was a key member in a broader, more dangerous criminal enterprise that sought to dominate profitable criminal conduct over the Ventura County region.  Likewise, defendant's rap sheet, along with the federal offense for which he now faces

sentencing, speak to a committed criminal street gang member.  (PSR ¶¶ 44, 47, 49, 52).

Defendant has a few, if any, mitigating factors relevant to his sentencing.  (PSR 69-75.)  Conversely, the need to afford adequate deterrence and to protect the public from further crimes of the defendant weigh in favor of a substantial sentence.  To this day, despite video recordings, phone conversations, and text messages demonstrating defendant pushing the drug sales and taxes in this case, defendant has, to the government's knowledge, shown little remorse and demonstrated no accountability for his actions.  In short, a balancing of the aggravating and mitigating factors only confirms that defendant represents a continued threat to the community and bears all the marks of an inevitable recidivist.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court a sentence at the low end of defendant's guideline range: 168 months' imprisonment, five years of supervised release, and a $100 special assessment.